IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 03-259 |
| ) | See Civil Action No. 05-980 |
| TAYLIN COOPER, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

BLOCH, District J.

On July 15, 2005, Petitioner filed a *pro se* Motion to Vacate Sentence under 28 U.S.C. § 2255 and brief in support thereof (Doc. No. 126). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 139) and Petitioner's Traverse to Government's Response to § 2255 Motion (Doc. No. 142), the Court denies Petitioner's motion for the reasons set forth below.[1]

---

[1] On July 18, 2005, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), this Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. On August 8, 2005, this Court received notice from Petitioner dated
(continued...)

## I. Background

On June 9, 2004, Petitioner pled guilty to one count of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, from on or around August 11, 2003, through October 28, 2003, in violation of Title 21, United States Code, Section 846. In the plea agreement entered into between Petitioner and the Government (Doc. No. 75, Gov. Ex. 1), the parties stipulated that the type and quantity of controlled substance attributable to Petitioner, for purposes of Section 2D1.1 of the United States Sentencing Guidelines, is at least five and not more than 15 kilograms of cocaine.

Based on the Presentence Investigation Report ("PIR") prepared by the Probation Officer, to which Petitioner did not object,[2] the Court found Petitioner to be a career offender pursuant to Section 4B1.1 of the Guidelines. Accordingly, the Court found Petitioner's offense level to be 34, his criminal history category to be VI, and his sentencing range to be 262-327 months.[3] See Doc. No. 94. On September 2, 2004, this Court sentenced Petitioner to a

---

[1] (...continued)
July 28, 2005, advising the Court that Petitioner wished to proceed on his original motion.

[2] Petitioner did file a request for a downward departure under the Guidelines, which the Court denied.

[3] Not taking into account Petitioner's classification as a career offender, Petitioner's offense level would have been 29, his criminal history category would still have been VI, and his sentencing range would have been 151-188 months, which would have been adjusted to 240 months to account for the statutory minimum sentence in this case.

term of imprisonment of 262 months and a term of supervised release of 10 years. Petitioner did not appeal his conviction or sentence. In July 2005, however, Petitioner, acting pro se, filed the present motion. The Court will address the claims raised in this motion below.

II.     **Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

28 U.S.C. § 2255 permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. As discussed below, the record in this case demonstrates that Petitioner is not entitled to relief under Section 2255, and therefore, no evidentiary hearing is necessary.

In his motion, Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel. For the reasons that follow, this Court rejects Petitioner's contentions.

A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed

4

under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).

Petitioner first argues that his counsel was ineffective when she advised Petitioner to enter into a plea agreement which stipulated that the type and quantity of controlled substance attributable to him for purposes of USSG § 2D1.1 is at least five but not more than 15 kilograms of cocaine, failed to object to the PIR as to this drug quantity, and failed to argue at sentencing that Petitioner should only be sentenced for four kilograms of cocaine. He argues that he was prejudiced both because stipulating to 5-15 kilograms of cocaine increased his statutory minimum sentence pursuant to 21 U.S.C. § 841 and because of its effect in determining his guideline sentencing range. The Court finds no merit in any of Petitioner's arguments.

First, Petitioner does not indicate how his counsel's advice that he stipulate to responsibility for 5-15 kilograms of cocaine fell below an objective standard of reasonableness under prevailing professional norms. He seems to rely solely on his own interpretation of a single piece of evidence to argue that he was responsible for only four kilograms of cocaine and that his counsel was unreasonable in advising him to enter into a plea agreement stipulating responsibility for any greater amount. However, his interpretation of a single piece of evidence does not establish that

his counsel's advice was ineffective. There is no allegation and certainly no evidence that defense counsel did not take all of the evidence, including that cited by Petitioner, into account when advising Petitioner. There is no evidence or indication that it was objectively unreasonable under prevailing professional norms for counsel to believe that the evidence in this case could demonstrate Petitioner's responsibility for 5-15 kilograms of cocaine or even more. Indeed, Petitioner himself, at his change of plea hearing, agreed with the Government's summary of the evidence in this case that established his responsibility for more than five kilograms of cocaine. See Doc. No. 119 at 17-20.[4]

Even more importantly, though, Petitioner is taking issue not only with the stipulation contained in the plea agreement in regard to drug quantity but also, apparently, to the charge to which he pled guilty. Petitioner was indicted for conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine. There is no indication anywhere in the record that the Government was willing to enter into a plea agreement for any lesser charge and/or to amend the indictment to charge

---

[4]  It is also unclear why Petitioner himself would choose to follow his counsel's advice if he believed that it was so clear that he was only responsible for four kilograms of cocaine. There is no allegation of any trickery or threat on the part of his counsel to coerce him into following her advice. Moreover, Petitioner admitted responsibility for five kilograms of cocaine at his change of plea hearing and was advised that, accordingly, the mandatory minimum term of imprisonment was 20 years.

Petitioner with conspiracy to distribute and possess with intent to distribute any amount of cocaine less than five kilograms, the minimum amount for the penalty provisions of 21 U.S.C. § 841(b)(1)(A) to apply.

Petitioner is, therefore, essentially arguing that his counsel was ineffective for failing to secure a plea agreement to his liking. However, he does not allege that the Government would have even accepted such an agreement, and, indeed, there is absolutely no record evidence that such an agreement was possible. Therefore, Petitioner cannot establish deficient performance, nor can he establish a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See United States v. Romero-Gallardo, 113 Fed. Appx. 351, 354 (10th Cir. 2004); United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000); United States v. Boone, 62 F.3d 323, 327 (10th Cir. 1995). See also Lawuary v. United States, 199 F. Supp. 2d 866, 877 (C.D. Ill. 2002) ("The failure to negotiate a different plea agreement should instead be characterized as trial strategy that does not constitute ineffective assistance of counsel."). Petitioner's argument is tantamount to arguing that his counsel should have obtained for him a "sweetheart deal" from the Government. Without specifying what his counsel unreasonably failed to do in pursuing this hypothetical deal, and without establishing

that there was a reasonable probability that the Government would accept such a deal, Petitioner cannot prevail.

Moreover, even if, theoretically, Petitioner could establish that the Government would have agreed to a plea agreement charging him with a lesser charge and stipulating to Petitioner's responsibility for only four kilograms of cocaine, Petitioner's sentence would remain unchanged. Petitioner was sentenced under the career offender provisions of USSG § 4B1.1. As such, his offense level was **not** based on drug quantity, but, rather, on the statutory maximum sentence of his offense of conviction. Because his sentence was enhanced pursuant to 21 U.S.C. § 851 for a prior drug conviction, his offense level would have been 34 in any event, since the statutory maximum under both 21 U.S.C. § 841(b)(1)(A), which applied in this case, and under Section 841(b)(1)(B), which would apply if Petitioner's offense was for conspiracy to distribute four kilograms of cocaine, would have been life imprisonment. See USSG § 4B1.1(b).

Hence, his guideline range would have been the same in either case. While the mandatory statutory minimum sentence would have been lower, Petitioner would have received a sentence greater than the statutory minimum in either case. Therefore, there is nothing in the record that would establish that there is a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different.

Petitioner's allegations regarding his counsel's alleged failure to challenge the drug quantity finding in the PIR and failure to argue for a lesser drug quantity at sentencing are completely dependent on him establishing that his counsel was ineffective for advising him to enter into the plea agreement in this case; it obviously would have been futile to argue contrary to the drug quantity to which Petitioner had already stipulated. As discussed above, there is no record support for Petitioner's claim that his counsel's advice regarding the plea agreement was ineffective. However, in any event, as discussed above, Petitioner's sentence was not based on drug quantity since he was sentenced as a career offender. Accordingly, there is no merit to Petitioner's argument.

Petitioner's second argument is that his counsel was ineffective in failing to object to his sentence under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and in failing to raise the issue on direct appeal. Petitioner's argument is based on the timing of his sentencing. Shortly before he was sentenced, the Supreme Court issued the <u>Blakely</u> decision. This decision did not directly pertain to the United States Sentencing Guidelines, but rather, in <u>Blakely</u>, the Supreme Court applied the rule of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), to invalidate the application of a sentencing enhancement imposed pursuant to Washington State's statutory determinate sentencing scheme on the basis that application of the

enhancement violated the defendant's Sixth Amendment right to a trial by jury where the facts supporting the enhancement were neither admitted by the defendant nor found by a jury beyond a reasonable doubt.

Petitioner argues that, in light of the Blakely decision, his counsel "had a duty to object to Petitioner being sentenced under the mandatory guideline system and take this issue on direct appeal." He asserts that had his case been appealed, and this issue raised, his case would have been on direct appeal at the time the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005), which held that the mandatory application of the Guidelines was unconstitutional, and that his case would have been summarily remanded for re-sentencing pursuant to Booker. The Court finds no merit in Petitioner's argument.

In Blakely, the Supreme Court found that the rule expressed in Apprendi, that is, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," precluded the sentencing judge from issuing a sentence that could not be imposed solely on the basis of the facts admitted in the guilty plea. In so doing, the Supreme Court clarified that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted

by the defendant." Blakely, 542 U.S. at 303 (citing Ring v. Arizona, 536 U.S. 584, 602 (2002)). "In other words," the Court held, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 303-04 (emphasis omitted). Rejecting the State of Washington's position that the relevant statutory maximum was the ten year limitation applicable to Class B felonies, the Court held that Blakely's Sixth Amendment rights were violated when the sentencing judge imposed the exceptional 90 month sentence because that sentence could not have been imposed solely on the basis of the facts admitted by the defendant. Thus, Blakely holds that a defendant's Sixth Amendment rights are violated where "the jury's verdict alone [or the facts admitted by the defendant] do[] not authorize the sentence." Id. at 305.

Blakely, of course, did not address the federal Sentencing Guidelines, but rather a state sentencing scheme.[5] Nonetheless, there were obviously potential implications for the federal Guidelines, which were similar to the Washington state sentencing system. However, the issue addressed in Blakely was enhancement of a sentence beyond the statutory maximum based upon judicial fact-finding. Petitioner's sentence, however, was not enhanced based

---

[5] The Supreme Court, in fact, expressed no opinion as to the Sentencing Guidelines. See id. at 305 n. 9.

11

upon any facts improperly found by the sentencing judge. His sentence was based solely on the existence of prior convictions, which neither <u>Blakely</u> nor <u>Apprendi</u> required to be found by a jury beyond a reasonable doubt. To the contrary, both expressly exempt prior convictions from having to be admitted by the defendant or found by a jury beyond a reasonable doubt (as does <u>Booker</u>). Since judicial fact-finding was not an issue in Petitioner's sentencing, it simply cannot be said that his counsel was unconstitutionally deficient for failing to raise an issue under <u>Blakely</u>, a case dealing with judicial fact-finding.

As it turned out, Petitioner's case may well have been remanded pursuant to <u>Booker</u> had he appealed. However, this would have not been obvious to a reasonable defense lawyer after <u>Blakely</u> but prior to <u>Booker</u>.[6] In <u>Booker</u>, the Supreme Court applied <u>Blakely</u> to the United States Sentencing Guidelines and held that the Sentencing Guidelines, if mandatory, were unconstitutional. However, the remedy imposed by the Court went far beyond the holding in <u>Blakely</u>. In the remedial part of the decision, the Court severed and excised the statutes making the Guidelines mandatory, thereby rendering the Guidelines merely advisory. See <u>Booker</u>, 543 U.S. at 245. Nothing in <u>Blakely</u> would necessarily lead to the assumption that the Guidelines would be preserved as merely advisory.

---

[6]   As noted above, the reasonableness of counsel's challenged conduct must be "viewed as of the time of counsel's conduct." <u>Sistrunk</u>, 96 F.3d at 670.

Moreover, since <u>Booker</u> had potential impact on all cases on direct review involving sentences in which the Guidelines were applied as mandatory, and not merely on those cases in which there were actual issues of enhancement based on judicial fact-finding, all such cases were remanded for re-sentencing. Nothing in <u>Blakely</u> would lead to the conclusion that even those cases in which enhancing a sentence beyond the statutory maximum based on judicial fact-finding was not an issue would be remanded as part of a general remand based on the broad-reaching remedy imposed in <u>Booker</u>.

In general, there is no duty on the part of defense counsel to anticipate changes in the law. See <u>Sistrunk</u>, 96 F.3d at 670-71; <u>Government of the Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989). Here, while, to be sure, the <u>Blakely</u> decision had raised questions regarding the constitutionality of the Sentencing Guidelines, those questions pertained to judicial fact-finding, an issue not present in this case. To expect counsel to raise an issue regarding the Sentencing Guidelines on appeal not supported by <u>Blakely</u> in anticipation of <u>Booker</u> asks not for an objective standard of reasonableness under prevailing professional norms, but rather prescience. See <u>United States v. Hoffner</u>, Nos. Crim. A. 00-456-01, Crim. A. 00-456-10, 2005 WL 3078220, at *5 (E.D. Pa. Nov. 16, 2005) ("That counsel chose not to raise a Sixth Amendment objection to movants' sentences that was contrary to established precedent at the time is not objectively unreasonable."); <u>United States v.</u>

Benveniste, No. Crim. A. 101CR0761JOF, Civ. A. 105CV1074JOF, 2006 WL 269969 (N.D. Ga. Feb. 3, 2006).

Simply put, there was no reason, after Petitioner's sentencing, for reasonable counsel to believe that Petitioner had any Sixth Amendment issues to be raised. At the very least, it cannot be said that failure to raise this issue was objectively unreasonable. See Gutierrez v. United States, No. 5:06-CV-44, No. 5:03-CR-366, 2006 WL 3541618, at *6 (S.D. Tex. Dec. 7, 2006). See generally Garner v. United States, Nos. 4:03-CR-8, 4:04-CV-67, 2006 WL 2585066, at *8 (E.D. Tenn. Sept. 5, 2006); Linder v. United States, No. 5:05CV228-3-V, No. 5:02CR37-5-V, 2006 WL 2270409 (W.D. N.C. Aug. 7, 2006).

Accordingly, there is no basis to Petitioner's assertion that his counsel was constitutionally deficient in failing to argue that Blakely applied in this case or to raise the issue on appeal.[7]

### III.   Conclusion

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a

---

[7]   The Court notes that this is not a case in which Petitioner alleges that he instructed his counsel to file a notice of appeal on his behalf and counsel failed to do so. See Roe v. Flores-Ortega, 528 U.S. 470 (2000).

constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

s/Alan N. Bloch<br>United States District Judge

Dated:    January 3, 2007

cc:       Taylin Cooper, #07923-068
          U.S. Penitentiary Allenwood
          P.O. Box 3000
          White Deer, PA 17887

ecf:      Counsel of record